IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KCK LTD., <br>     Petitioner, <br><br> v. <br><br> IDENTITY INTELLIGENCE <br> GROUP, LLC, <br>     Respondent. | § § § § § § § § § | No. 3:25-CV-045-L-BW |
| KCK LTD., <br>     Petitioner, <br><br> v. <br><br> DAVID NORRIS, <br>     Respondent. | § § § § § § § § § | No. 3:25-CV-047-B-BW |
| KCK LTD., <br>     Petitioner, <br><br> v. <br><br> AMERICOR FUNDING, LLC, <br>     Respondent. | § § § § § § § § § | No. 3:25-CV-048-K-BW |

**CONSOLIDATED FINDINGS, CONCLUSIONS, AND
RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are motions filed by Petitioner KCK Ltd. to enforce three

arbitral summonses commanding non-parties to the arbitration to appear before the

arbitrator in California on July 8, 2025, to produce documents. ('45 Dkt. No. 1; '47

-1-

Dkt. No. 1; '48 Dkt. No. 1.)[1]  The motions have been referred to the undersigned magistrate judge.  ('45 Dkt. No. 3; '47 Dkt. No. 4; '48 Dkt. No. 3.)

On July 1, 2025, the Court granted KCK's motions to expedite briefing in each case.  ('45 Dkt. No. 7; '47 Dkt. No. 7; '48 Dkt. No. 6.)  Respondents Identity Intelligence Group, LLC ("IDIQ"), David Norris, and Americor Funding, LLC ("Americor") filed their responses on July 3, 2024.  ('45 Dkt. No. 10 ("IDIQ Resp."); '47 Dkt. No. 9 ("Norris Resp."); '48 Dkt. No. 9 ("Americor Resp.").)  KCK filed its replies on July 4, 2024.  ('45 Dkt. No. 11; '47 Dkt. No. 10; '48 Dkt. No. 10.)

For the following reasons, the undersigned **RECOMMENDS** that the motions be **DENIED**.

**I.**

Beyond Finance, LLC, a subsidiary of Petitioner, employed Grant Eckert as its chief marketing officer.  (Norris Resp. at 2.)[2]  Eckert and Beyond Finance parted ways in January 2024, and Eckert began working for Respondent Americor the following month as its chief strategy officer.  (*Id.* at 1, 3.)  A disagreement arose concerning the details surrounding Eckert's exit from Beyond Finance; specifically, about whether he had been fired—either for cause or without cause—or resigned

---

[1] The undersigned files this Consolidated Findings, Conclusions, and Recommendation of the Magistrate Judge because the respondents in the three actions are represented by common counsel and present identical arguments for denial of the motions.  Filed materials are cited by the last two digits of the respective case and the docket entry number in that case.

[2] The briefing is largely identical across the three cases.  The undersigned recounts the background from what appear to be uncontested facts.

with good reason. (*Id.* at 3, 5.) Because these details are consequential under the relevant employment agreement, KCK, Beyond Finance, and a related company, FS Capital Partners, LP, filed a claim in arbitration against Eckert. (*Id.* at 5.) KCK also alleges that Eckert violated a covenant not to compete by performing his job duties at Americor and by partnering with IDIQ. (*See* '45 Dkt. No. 1 at 3-4; '47 Dkt. No. 1 at 3-4.) A final merits hearing in the arbitration is set to commence in Dallas on September 8, 2025.

At KCK's request, the arbitrator issued summonses to the three Respondents here: (1) Americor, Eckert's employer ('48 Dkt. No. 1 at 4; Dkt. No. 1-1); (2) Norris, Americor's CEO ('47 Dkt. No. 1 at 4; '47 Dkt. No. 1-1); and IDIQ, a company Eckert is alleged to have partnered with in violation of the non-competition covenant ('45 Dkt. No. 1 at 4; '45 Dkt. No. 1-1). In each instance, the summons is titled "ARBITRATION SUMMONS TO PRESENT DOCUMENTARY EVIDENCE AT IN-PERSON HEARING." ('45 Dkt. No. 1-1 at 1; '47 Dkt. No. 1-1 at 1; '48 Dkt. No. 1-1 at 1.) Additionally, each summons states the following:

> By the authority conferred on the undersigned arbitrator by Section 7 of the United States Arbitration Act (9 U.S.C. § 7), YOU ARE HEREBY COMMANDED to appear in-person at a hearing before the undersigned arbitrator at Hilton Los Angeles Airport, 5711 West Century Boulevard, Los Angeles, California, 90045 on July 8, 2025, at 11:00 a.m. PST to bring with you to the hearing the documents identified in Schedule A attached to this SUMMONS.

('47 Dkt. No. 1-1 at 1; '47 Dkt. No. 1-1 at 1; '48 Dkt. No. 1-1 at 1.)

Respondents advance four reasons why KCK's motions to enforce the summons should be denied. First, they contend that the Federal Arbitration Act ("FAA") does not authorize the kind of summons that has been served on them. Second, they contest this Court's ability to exercise personal jurisdiction over them. Third, they argue that the matter must be heard by a court in California, where Respondents were instructed to perform under the summons. Fourth, they challenge the summons' document requests as objectionable.

## II.

The Federal Arbitration Act authorizes arbitrators to summon a non-party to the arbitration, and it empowers courts to enforce the arbitrator's summons. The relevant provision states:

> The arbitrators selected . . . , or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. The fees for such attendance shall be the same as the fees of witnesses before masters of the United States courts. Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

9 U.S.C. § 7.

Section 7 "incorporates by reference Federal Rule of Civil Procedure 45(b)(2), which governs the service and enforcement of subpoenas to appear before the federal courts." *Certified Lab'ys v. Momar, Inc.*, No. 3:22-MC-60-K-BN, 2022 WL 4370456, at *2 (N.D. Tex. Aug. 16, 2022) (quoting *Broumand v. Joseph*, 522 F. Supp. 3d 8, 17 (S.D.N.Y. 2021)), *accepted* 2022 WL 4371507 (N.D. Tex. Sept. 21, 2022).

### III.

### A.

As in any case, the Court must first ensure that it has subject matter jurisdiction, considering the matter sua sponte if necessary. *See Aetna Health Mgmt., LLC v. Benchmark Health Network, LLC*, No. 3:20-CV-00443-X, 2020 WL 980250, at *4 (N.D. Tex. Feb. 28, 2020); *In re Jet HomeLoans Ventures, LLC*, No. 3:21-CV-2214-D, 2021 WL 5908901, at *3 (N.D. Tex. Dec. 14, 2021). "It is well established that the [FAA] is not an independent grant of federal jurisdiction." *Aetna Health Management, LLC*, 2020 WL 980250, at *1 (quoting *Smith v. Rush Retail Centers, Inc.*, 360 F.3d 504, 506 (5th Cir. 2004)). Courts considering a motion to enforce an arbitral summons require parties to allege an independent basis for jurisdiction. *See, e.g., Chicago Bridge & Iron Co. N.V. v. TRC Acquisition, LLC*, No. 14-1191, 2014 WL 3796395, at *3 (E.D. La. July 29, 2014) (Engelhardt, J.).

Here, KCK alleges that subject matter jurisdiction exists based on the Court's diversity jurisdiction under 28 U.S.C. § 1332. ('45 Dkt. No. 1 at 3-4; '47 Dkt. No. 1 at 3-4; '48 Dkt. No. 3-4.) KCK is a Bermuda corporation with its principal place of

business in Bermuda. ('45 Dkt. No. 1 at 2; '47 Dkt. No. 1 at 2; '48 Dkt. No. 1 at 2.) It alleges that Americor is a limited liability company formed under Delaware law and (upon information and belief) that its sole member is domiciled in Florida ('48 Dkt. No. 1 at 2); that Norris is a citizen of California ('47 Dkt. No. 1 at 2); and that IDIQ is a limited liability company formed under Nevada law and (upon information and belief) that its two members are an individual domiciled in California and another LLC ('45 Dkt. No. 1 at 2). With respect to the LLC that is a member of IDIQ, KCK alleges that available public information gives it "no reason to believe that any member" of that underlying LLC is a citizen of Bermuda. (*Id.*)

At the outset of the enforcement proceedings involving IDIQ and Norris, the undersigned stated while conducting a preliminary assessment of KCK's motions for expedited consideration that "KCK properly alleges that jurisdiction exists under 28 U.S.C. § 1332 based on complete diversity of the parties and an amount in controversy exceeding $75,000." ('45 Dkt. No. 5 at 1; '47 Dkt. No. 5 at 1.) On closer consideration, however, that does not appear to be the case.

In each of its petitions to compel compliance with the arbitration summonses, KCK alleges that the amount in controversy was satisfied because Eckert violated a non-competition agreement and KCK "suffered damages exceeding $75,000." ('45 Dkt. No 1 at 3-4; '47 Dkt. No. 1 at 3-4; '48 Dkt. No. 1 at 3-4.)

To show diversity jurisdiction, the party invoking the court's jurisdiction must establish that each plaintiff is diverse from each defendant and that the amount in

controversy exceeds the jurisdictional threshold of $75,000.  *See Werder v. Allstate Fire & Cas. Ins. Co.*, 731 F. Supp. 3d 724, 727 (N.D. Tex. 2024).  The Fifth Circuit has not instructed courts how to value the amount in controversy for purposes of an action to enforce an arbitration summons, "[a]nd 'there is a split among courts over whether . . . the money at issue in the underlying arbitration is relevant." *Certified Laboratories*, 2022 WL 4370456, at *3 (quoting *In re Jet HomeLoans Ventures, LLC*, 2021 WL 5908901, at *5).

District courts in this circuit hold that a party cannot establish the amount in controversy by simply pointing to the value of the dispute in arbitrationIn *Chicago Bridge*, a plaintiff seeking enforcement of an arbitral subpoena argued that the jurisdictional threshold was satisfied by the amount of damages sought in the underlying arbitration, including a $1 million payment made to a party to the arbitration.  2014 WL 3796395, at *2.  Judge Engelhardt concluded this was insufficient to establish jurisdiction because that amount was not sought from the subpoenaed non-party—i.e., the party to the federal court action before him.  Rather, all the petitioner sought from this respondent was for a third-party witness to provide documents.  *Id.*  Because the party seeking to enforce the subpoena failed to "provide[] the Court with any facts that would justify a finding that the amount in controversy meets the jurisdictional threshold," jurisdiction was not established.  *Id.*

Decisions from other judges in this district substantiate that the amount is controversy cannot be shown by merely pointing to the value of the underlying

-7-

arbitration. In *Aetna Health Management*, a conclusory allegation that the dispute in arbitration involved "millions of dollars" was insufficient to establish jurisdiction. 2020 WL 980250, at *3. That allegation, the court stated, did not show "an amount in controversy against [the subpoenaed non-party,] neither in the arbitration nor in this dispute over the arbitral subpoena." *Id.* In *Certified Labs.*, the court accepted that jurisdiction existed where a petitioner alleged that the value of the information and testimony sought by the arbitration subpoenas exceeded $75,000. 2022 WL 4370456, at *3-4.

Accepting the prevailing view in this circuit, it is evident that KCK has not alleged facts establishing the amount in controversy required for subject matter jurisdiction. KCK relies solely on the value of a claim in arbitration—that Eckert violated a non-competition agreement and KCK suffered at least $75,000 in harm as a result. (*See, e.g.*, '47 Dkt. No. 1 at 3-4.) This is the type of information that has been deemed insufficient, and it similarly fails to establish jurisdiction here.

**B.**

Even if jurisdiction existed, KCK is not entitled to enforcement of the summonses for an independent reason. Respondents argue that the summonses do not meet the requirements for enforcement under § 7. That is, they argue that the FAA does not allow an arbitrator to summon a non-party to an arbitration proceeding to produce documents except to do so in connection with a command to

testify. (Norris Resp. at 10-12.) These summonses, they assert, are invalid because they only require a document production.

In reply, KCK argues that Respondents are properly commanded to appear at a hearing—albeit not a *final* hearing—before the arbitrator. It points to authority validating arbitrators' ability to compel third parties to appear and produce documents at a preliminary hearing. *See, e.g.*, *All. Healthcare Servs., Inc. v. Argonaut Priv. Equity, LLC*, 804 F. Supp. 2d 808, 811 (N.D. Ill. 2011) (holding that § 7 authorizes an arbitrator to summon a witness to appear at a preliminary hearing). The summonses at issue plainly require Respondents to appear "at a hearing before the undersigned arbitrator" and, thus, do not run afoul of decisions disallowing "pre-hearing" document-production summonses. *See, e.g.*, *Empire Fin. Grp., Inc. v. Penson Fin. Servs., Inc.*, No. 3:09-CV-2155D, 2010 WL 742579, at *3 (N.D. Tex. Mar. 3, 2010) ("The court . . . holds that § 7 of the FAA does not authorize arbitrators to compel production of documents from a non-party, unless they are doing so in connection with the non-party's attendance at an arbitration hearing."). The undersigned agrees with KCK that the summonses require Respondents to appear at a hearing in the arbitrator's presence and do not call for a kind of "pre-hearing" compliance that courts have held invalid.

But the attack Respondents make on the summonses is different than the one KCK defends against. Respondents do not take aim at the precise setting in which they are instructed to produce documents—whether it is at a hearing in the

arbitrator's presence or not. Rather, they focus on the particular command of the arbitrator. They assert that the summonses are not authorized by § 7 because they require only the production of documents without also summoning them to testify as a witness. (Norris Resp. at 10 ("The at-issue summons does not request the presence of Respondent 'as a witness.' 9 U.S.C. § 7. To the contrary, the Summons demands documents. That is all.").) The text of § 7 and caselaw support Respondents' argument that an arbitrator is not authorized to issue this kind of summons.

"In interpreting a statute, we must, of course, begin with the text." *Hay Group, Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 406 (3d Cir. 2004). Doing so here, the undersigned observes that § 7 authorizes an arbitrator to summon a person to appear "*as a witness* and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." 9 U.S.C. § 7 (emphasis added). By requiring the summoned person to attend "as a witness," the statute clearly mandates that the recipient serve a certain role. That is, the arbitrator can only summon the person to attend the arbitration "as a witness"; by implication he cannot summon the person to appear "as" anything else. *See Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 232 (2011) ("*Expressio unius, exclusio alterius.*"). And commanding a person to attend "as a witness" implies that the person will give

testimony, as that is inherent in the common understanding of the term as it is used in connection with court-like proceedings.[3]

The statute includes an additional duty that can be imposed on a witness who is required to attend an arbitration. "[I]n a proper case," 9 U.S.C. § 7, an arbitrator may also command the witness to bring documents—but that is a supplemental duty the arbitrator may impose, not an alternative one. The clear upshot of § 7 is that an arbitrator may only summon a witness, but in some cases he may also direct that witness to be a document producer.

If doubt remained after considering that statutory text, it would be resolved by § 7's limitation on a court's ability to enforce a summons. The statute authorizes a district court to compel compliance "if any person . . . so summoned *to testify* shall refuse or neglect to obey said summons[.]" 9 U.S.C. § 7 (emphasis added). This provision corroborates that, under § 7, testimony is the purpose for which a person may be summoned to appear at an arbitration hearing.[4]

Caselaw points to that conclusion. The Third Circuit's decision in *Hay Group* is particularly instructive. At issue there was whether an arbitrator can compel a non-party to produce discovery outside of a hearing. *Hay Group, Inc.*, 360 F.3d at

---

[3] *See* Witness, Black's Law Dictionary (12th ed. 2024) ("1. Someone who sees, knows, or vouches for something <a witness to a testator's signature>. 2. Someone who gives testimony under oath or affirmation (1) in person, (2) by oral or written deposition, or (3) by affidavit <the witness to the signature signed the affidavit.>.").

[4] If, rather, there is not perfect overlap between a summons requiring a person to attend "as a witness" and one summoning a person "to testify," the statute's language is clear that a court has authority to enforce only the latter.

405.  Then-Judge Alito relied on the same language in § 7 to point out that "[t]he only power conferred on arbitrators with respect to the production of documents by a non-party is the power to summon a non-party 'to attend before them or any of them as a witness *and* in a proper case *to bring with him or them* [documents].'"  *Id.* at 407 (quoting 9 U.S.C. § 7).  So, the court explained, the power to require a non-party to provide documents "clearly applies only to situations in which the non-party accompanies the items to the arbitration proceeding[.]"  *Id.*  In rejecting the notion that § 7 implied an ability to command a production of documents outside of a hearing, the Third Circuit observed that the authority to summon is tied to obtaining testimony:  "By conferring the power to compel a non-party witness to bring items to an arbitration proceeding while saying nothing about the power simply to compel the production of items without summoning the custodian *to testify*, the FAA implicitly withholds the latter power."  *Id.* at 408 (emphasis added).  This reasoning reinforces a conclusion that an arbitrator's authority to command a non-party to produce documents may be exercised only in connection with a command to appear to provide testimony.

The Third Circuit's decision further supports this conclusion by its understanding of subpoenas under Federal Rule of Civil Procedure 45 as it existed at the time of the FAA's enactment.  *Hay Group, Inc.*, 360 F.3d at 407-08.  Until the rule's 1991 amendment, "[t]he accepted view was that nothing in Rule 45 gave the court the power to issue documents-only subpoenas to non-parties."  *Id.* at 408.  If

federal district courts lacked authority to require non-parties to produce documents in litigation except as a corollary to the duty to testify, it is reasonable that Congress, through § 7, would grant an analogous—but not greater—power to arbitrators to hail non-parties into arbitration proceedings.

Other courts have followed the reasoning in *Hay Group* and, in doing so, further illustrate that the power to require non-parties to attend hearings to produce documents is attendant to the power to require them to appear for the purpose of testifying. *See Life Receivables Tr. v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 216 (2d Cir. 2008) ("The language of section 7 is straightforward and unambiguous. Documents are only discoverable in arbitration when brought before arbitrators by a testifying witness."); *Chicago Bridge*, 2014 WL 3796395, at *3 ("This Court agrees with the Second, Third, and Fourth Circuits that Section 7 provides only for the issuance and enforcement of a subpoena *duces tecum* against non-parties who are compelled to testify as witnesses before the arbitrator, not for a subpoena seeking merely the production of documents by a non-party who is not summoned to testify as a witness before the arbitrator." (footnote and citations omitted)).

Having concluded that § 7 does not authorize an arbitrator to issue a summons requiring a person only to produce documents, the undersigned considers whether the summonses at issue do only that. In each instance, the summons is titled as one "TO PRESENT DOCUMENTARY EVIDENCE." And each one commands the summoned person "to appear in-person at a hearing before the undersigned

arbitrator . . . to bring with you to the hearing the documents identified in Schedule A attached to this SUMMONS." ('47 Dkt. No. 1-1 at 1.)  The summons does not command the person to testify or be prepared to testify, not even to establish the authenticity of the documents being produced.  They say nothing—and imply nothing—about testifying.

KCK nonetheless asserts that the summonses "strictly compl[y]" with "every requirement" of § 7 by mandating appearance "as a witness." ('47 Dkt. No. 10 at 4.)  In its apparent view, appearing before the arbitrator and presenting documents is equivalent to testifying as a witness. (*Id.*)  It provides no authority supporting that conclusion, and for the reasons discussed above, the undersigned declines to accept that merely appearing with documents is synonymous with witness testimony.

The summonses KCK seeks to enforce require only that the Respondents appear before the arbitrator and produce documents.  They do not call upon the recipients "to attend before [the arbitrator] as a witness." *See* 9 U.S.C. § 7.  Because Respondents have not been "summoned to testify," *see id.*, the Court should decline to enforce the summonses.

## C.

Respondents also argue that, if a court could enforce these summonses, it cannot be this Court. (Norris Resp. at 13-18.)  They aver that their lack of contacts with Texas prevents the Court from exercising personal jurisdiction over them. (Norris Resp. at 13-17.)  And because § 7 empowers the district court where the

arbitrators are "sitting" to enforce a summons, the parties dispute whether the arbitrator is "sitting" in Texas or California for purposes of these summonses. *Compare, e.g.*, *Depuy Synthes Sales, Inc. v. Smith + Nephew, Inc.*, No. 1:21-MC-11-MWM, 2022 WL 79812, at *3 (S.D. Ohio Jan. 7, 2022) (concluding venue was where the arbitration is administered, not where performance of summons was commanded); *with, e.g.*, *Shirvanian v. Byers*, No. 16-21261-CIV, 2016 WL 11754322, at *2–4 (S.D. Fla. Sept. 22, 2016) (concluding Florida court could adjudicate motion to enforce subpoena where arbitration panel located in California would travel to Florida to conduct hearing to which non-party was summoned). In light of the impediments to enforcement of the summonses discussed above and the expedited nature of these proceedings, the Court need not determine these issues.

\* \* \*

For the reasons discussed, the undersigned **RECOMMENDS** that the District Judge **DENY** KCK's motions to compel. (*See* '45 Dkt. No. 1; '47 Dkt. No. 1; '48 Dkt. No. 1.)

**SO RECOMMENDED** on July 7, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

   A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).